# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ELIZABETH CARLEY,

       Petitioner

v.

DWIGHT NEVEN, et al.,

       Respondents

Case No.: 2:16-cv-02227-JAD-BNW

**Merits Order Denying
Federal Habeas Relief**

[ECF No. 12]

     Petitioner Elizabeth Carley was sentenced to two consecutive terms of eighteen years in prison with parole eligibility beginning after a total of ten years, after she pled guilty in Nevada state court to forgery, establishing or possessing a financial forgery laboratory, possession of credit or debit card without cardholder's consent, and theft.[1]  Carley seeks a writ of habeas corpus under 28 U.S.C. § 2254 based on claims that her trial counsel was ineffective and her guilty plea was not knowing, voluntary, or intelligent.[2]  Having evaluated the merits of those claims, I find that habeas relief is not warranted, so I deny Carley's petition, deny her a certificate of appealability, and close this case.

## Background

### A.    The facts underlying Carley's conviction[3]

     At the grand jury proceedings, an employee of a property-management company testified that a lease agreement was entered into for the apartment residence located at 1500 E. Karen Avenue.  In the renter's file for the apartment residence, there was a list of roommates that included Carley and another individual named James Stojic as well as a copy of required renter's

---

[1] ECF No. 15-10.

[2] ECF No. 12 at 16–46.

[3] These facts are taken from the grand jury proceedings transcript and arrest report.  ECF Nos. 13-10, 13-20.  For simplicity's sake, I cite to these exhibits generally for this entire background section.

insurance listing Carley and Stojic as additional insureds. A Carmax employee testified that an individual purchased a vehicle using the identification of an individual named Ashley Ilyin.

A detective with the Las Vegas Metropolitan police department testified that he interviewed Carley who was in custody for two separate probation violations.  Following the interview, Carley called Stojic from a recorded telephone line and told him to get rid of the Ilyin identification ("ID") and the ID used to rent the apartment residence.  Carley was interviewed by detectives again and she admitted to purchasing a vehicle from Carmax using Ilyin's name and ID.

Upon execution of the search warrant of the apartment residence, the detective testified that items such as drivers' licenses, photocopies of IDs, credit cards, printers, checks, paper stock, card stock, computers, and printers were seized.   In addition, court documents for, and photographs of, Carley were found at the apartment residence.  Further, an individual named Ivan Barraza was searched after leaving the apartment residence at the time of the execution of the search warrant, and a cardstock printer, identification cards, and credit cards were found in his possession.

**B.    Procedural history**

While she was serving probation for two separate matters,[4] Carley and her two co-defendants, James Stojic and Ivan Barraza, were charged in a sixty-three count indictment for conspiracy to commit theft, possession or sale of document or personal identifying information, burglary, forgery, obtaining and using personal identification of another, theft, conspiracy to commit establishing or possessing a financial forgery laboratory, establishing or possessing a financial laboratory, possessing personal identifying information, and possession of credit or debit card without cardholder's consent.[5]  The indictment charged 61 felonies and 2 misdemeanors.[6]

---

[4] ECF Nos. 44-1, 44-4.

[5] ECF No. 13-25.

[6] *Id.*

1        In a January 2, 2014, guilty plea agreement and plea colloquy, Carley pled guilty to one

2   count of forgery, one count of establishing or possessing a financial forgery laboratory, one

3   count of possession of credit or debit card without cardholder's consent, and one count of theft.[7]

4   Her co-defendant, Stojic, also pled guilty to one count of forgery, one count of establishing or

5   possessing a financial forgery laboratory, one count of possession of credit or debit card without

6   cardholder's consent, and one count of theft.[8]  The State offered the plea deal to Carley and

7   Stojic contingent on both defendants accepting the plea agreement.[9] In exchange, the State

8   agreed to drop the remaining charges.[10]  The other co-defendant, Barraza, had

9   pled guilty to one count of possession of credit or debit card without cardholder's consent, one

10  count of establishing or possessing a financial forgery laboratory, and one count of conspiracy to

11  commit establishing or possessing a financial forgery laboratory in a plea agreement on July 8,

12  2013.[11]

13        Carley then filed a motion to appoint alternate counsel, and the state district court

14  appointed new counsel.[12]  Prior to sentencing, Carley filed a motion to withdraw her guilty plea

15  based on the alleged coercive behavior of her former counsel and counsel for Stojic and because

16  she entered her plea unknowingly.[13]  Following an evidentiary hearing, the state district court

17  denied Carley's motion to withdraw her guilty plea and found that her plea was entered freely

18  and voluntarily.[14]

19

20  _____

21  [7] ECF Nos. 14-31, 15.

22  [8] ECF No. 14-33.

23  [9] ECF No. 14-31 at 4.

24  [10] ECF Nos. 14-30, 13-32.

25  [11] ECF No. 14-9.

26  [12] ECF No. 15-1.

27  [13] ECF No. 15-5 at 5.

28  [14] ECF No. 15-9 at 11–12.

Carley had prior felony convictions and was eligible to be sentenced as a habitual criminal.[15]  The state district court sentenced Carley to two consecutive terms of eighteen years in prison with parole eligibility beginning after five years for each term under the small habitual criminal statute.[16]  Carley appealed, and the Nevada Supreme Court affirmed her judgment of conviction.[17]  On appeal, the Nevada Supreme Court found that her claim of coercion was belied by the record and that her plea was entered knowingly and voluntarily.[18]

Similar to Carley, Stojic also filed a motion to withdraw his guilty plea post-plea and pre-sentencing.[19]  In his motion to withdraw guilty plea, Stojic alleged that his counsel's ineffective assistance rendered his guilty plea invalid because his counsel incorrectly advised him that his plea would lead to one small habitual sentence.[20]  Stojic, however, was not appointed alternate counsel.  The state district court denied Stojic's motion to withdraw his guilty plea and found that "[a]ppointment of an attorney . . . wouldn't have changed the record."[21]

Stojic appealed his judgment of conviction on the basis that the state district court erred by denying his presentence motion to withdraw his guilty plea.  The Nevada Court of Appeals found that the state district court abused its discretion by not appointing conflict-free counsel to represent Stojic during the pendency of his motion to withdraw guilty plea.[22]  The Nevada Court of Appeals reversed his judgment of conviction and remanded to the state district court with

---

[15] *Id.* at 21.

[16] *Id.* at 22.

[17] ECF No. 15-20.

[18] *Id.* at 3.

[19] ECF No. 15-13.

[20] *Id.* at 4-5.

[21] ECF No. 15-16 at 3.

[22] ECF No. 16-18 at 3–4.

instructions to appoint conflict-free counsel to represent Stojic in his motion to withdraw his guilty plea and conduct an evidentiary hearing.[23]

On remand, Stojic was appointed new counsel and filed a supplemental motion to withdraw guilty plea.[24]  Before the state district court ruled on the motion, Stojic entered into a plea agreement wherein he agreed to plead guilty to one count of establishing or possessing a financial forgery lab, one count of possession of credit cards or debit card without cardholder's consent, and one count of possession of document or personal identifying information.[25]  At Stojic's sentencing hearing, the State provided that "part of the reason for this negotiation related to allegations concerning the search of the Defendant's apartment as well as luggage found with the codefendant Ivan Barraza."[26]

Carley filed a state habeas petition.[27]  The state district court denied her petition, and the Nevada Court of Appeals affirmed that denial.[28]  Carley filed a federal habeas petition and amended petition.[29]  The respondents filed a motion to dismiss.[30]  I granted the respondent's motion to dismiss in part, finding Ground 1(b) actually unexhausted but technically exhausted as procedurally barred by the state courts, but I deferred the decision on whether Carley could demonstrate cause and prejudice under *Martinez v. Ryan*.[31]  The respondents answered and Carley replied.[32]

---

[23] *Id.* at 4.

[24] ECF No. 18.

[25] ECF No. 19-18.

[26] ECF No. 19-19 at 12.

[27] ECF Nos. 15-26, 16-7.

[28] ECF Nos. 16-16, 19.

[29] ECF Nos. 9, 12.

[30] ECF No. 29.

[31] ECF No. 34.  *See Martinez v. Ryan*, 566 U.S. 1 (2012).

[32] ECF Nos. 45, 46.

**Discussion**

**A.** **Legal standards**

*1.* ***Antiterrorism and Effective Death Penalty Act (AEDPA)***

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[33]  A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[34]  And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[35]  Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[36]  The "objectively unreasonable" standard is difficult to satisfy;[37] "even 'clear error' will not suffice."[38]

Habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[39] As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision

[33] 28 U.S.C. § 2254(d).

[34] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[35] *White v. Woodall*, 134 S. Ct. 1697, 1705–07 (2014).

[36] *White*, 134 S. Ct. 1705–06.

[37] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[38] *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

[39] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

1   "was so lacking in justification that there was an error well understood and comprehended in
2   existing law beyond any possibility of fairminded disagreement."[40]  "[S]o long as 'fairminded
3   jurists could disagree' on the correctness of the state court's decision," habeas relief under
4   Section 2254(d) is precluded.[41]  AEDPA "thus imposes a 'highly deferential standard for
5   evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of
6   the doubt.'"[42]

7          If a federal district court finds that the state court committed an error under § 2254, the
8   district court must then review the claim de novo.[43]  The petitioner bears the burden of proving
9   by a preponderance of the evidence that she is entitled to habeas relief,[44] but state-court factual
10  findings are presumed correct unless rebutted by clear and convincing evidence.[45]

11                  **2.      Standard for Federal Habeas Review of an Ineffective-Assistance Claim**

12         The right to counsel embodied in the Sixth Amendment provides "the right to the
13  effective assistance of counsel."[46]  Counsel can "deprive a defendant of the right to effective
14  assistance[] simply by failing to render 'adequate legal assistance[.]'"[47]  In the hallmark case of
15  *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance
16  claim requires a petitioner to show that: (1) her counsel's representation fell below an objective
17  standard of reasonableness under prevailing professional norms in light of all of the

18

19  [40] *Id.* at 103.

20  [41] *Id.* at 101.

21  [42] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

22  [43] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we
23  may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error,
    we must decide the habeas petition by considering de novo the constitutional issues raised.").

24  [44] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

25  [45] 28 U.S.C. § 2254(e)(1).

26  [46] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397
27  U.S. 759, 771 n.14 (1970)).

28  [47] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

circumstances of the particular case;[48] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[49]

A reasonable probability is "probability sufficient to undermine confidence in the outcome."[50]  Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting effects of hindsight.[51]  "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[52]  The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[53]

When an ineffective-assistance-of-counsel claim is in the context of a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial."[54]  As the United States Supreme Court observed:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenge to convictions obtained through a trial.  For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the [petitioner] by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have lead counsel to change his recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.[55]

---

[48] *Strickland*, 466 U.S. at 690.

[49] *Id.* at 694.

[50] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000)

[51] *Strickland*, 466 U.S. at 689.

[52] *Harrington*, 562 U.S. at 104.

[53] *Id.*

[54] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[55] *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on an ineffective-assistance claim as "doubly deferential."[56]  So, the court must "take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d)'"[57] and consider only the record that was before the state court that adjudicated the claim on its merits.[58]

**B.    Evaluating Carley's remaining claims**

In Ground 1, Carley alleges that her trial counsel rendered ineffective-assistance during the pre-trial and plea bargaining stages in five ways:[59]

| | |
|---|---|
| Ground 1(a): | Counsel failed to file a motion to suppress the evidence seized at 1500 E. Karen Ave. |
| Ground 1(b): | Counsel failed to file a motion to suppress Carley's statements to law enforcement regarding the Carmax vehicle. |
| Ground 1(c): | Counsel failed to challenge insufficient counts in the indictment. |
| Ground 1(d): | Counsel failed to advise Carley as to defenses related to the residence at 1500 E. Karen Ave. |
| Ground 1(e): | Counsel failed to advise Carley that she was subject to be sentenced as a habitual offender. |

In Ground 2, Carley asserts that her guilty plea was not knowing, voluntary, or intelligent because her counsel and Stojic's counsel coerced her to plead guilty and because her counsel failed to properly advise her regarding the strength of the State's case.

**1.    *Grounds 1(a)—ineffective assistance re: motion to suppress evidence seized at residence.***

In Ground 1(a), Carley alleges that she was denied effective-assistance-of-counsel when her counsel failed to move to suppress evidence seized at an apartment residence located at 1500

---

[56] *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

[57] *Id.*

[58] *Id.* at 181–84.

[59] ECF No. 12 at 16.

1   E. Karen Avenue.[60]  Carley's co-defendant, Barraza, was arrested near the apartment, and

2   evidence in a suitcase and backpack that he was carrying was also seized.  Carley asserts that the

3   warrant for the apartment was overbroad, the police failed to properly document items seized

4   from the apartment, and the police did not have a warrant to search Barraza.[61]  She adds that

5   Stojic was offered a better plea deal on remand due to allegations concerning the search of the

6   apartment residence.[62]  In affirming the denial of Carley's state habeas petition, the Nevada

7   Court of Appeals rejected these theories:

> Carley claimed her counsel was ineffective for failing to file a motion to suppress evidence obtained pursuant to a search warrant. Carley asserted the warrant violated her Fourth Amendment rights because it was not based on probable cause and lacked particularity.  Carley failed to demonstrate her counsel's performance was deficient or resulting prejudice.  Carley stated her counsel informed her that counsel had reviewed the warrant, concluded it was valid, and declined to file a motion to suppress on that basis. Tactical decisions such as this one "are virtually unchallengeable absent extraordinary circumstances," *Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989), which Carley did not demonstrate.
>
> Moreover, search warrants must be based on probable cause.  See U.S. Const. amend. IV; *Mapp v. Ohio*, 367 U.S. 643, 646 n.4 (1961); *Keesee v. State*, 110 Nev. 997, 1002, 879 P.2d 63, 66-67 (1994).  "Probable cause requires . . . trustworthy facts and circumstances which would cause a person of reasonable caution to believe that it is more likely than not that the specific items to be searched for are: seizable and will be found in the place to be searched."  *Keesee*, 110 Nev. at 1002, 879 P.2d at 66 (internal quotation marks omitted).
>
> Additionally, search warrants must describe the items to be seized with particularity.  *See* U.S. Const. amend. IV.  While the descriptions must be specific enough to allow the person conducting the search to reasonably identify the things authorized to be seized, a search warrant that describes generic categories of items will not be deemed invalid if a more specific description of an item is not possible. *See United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).
>
> Here, we conclude Carley's admissions regarding her involvement in fraudulent activity, her recorded jailhouse phone call to an accomplice further discussing the fraudulent activities, and the authorities' investigation into Carley and her associates fraudulent activities sufficiently established probable cause for the issuance of the search warrant. We also conclude the warrant described the items to be seized with sufficient particularity to permit the persons conducting the search to identify the things authorized to be seized because the warrant plainly authorized the searchers to collect evidence that could be used in making fraudulent documents.  Accordingly, Carley failed to demonstrate a reasonable probability she

---

[60] *Id.* at 18.

[61] *Id.* at 19–25.

[62] *Id.* at 32.

would have refused to plead guilty and would have insisted on going to trial had counsel challenged the validity of the search warrant.  Therefore, the district court did not err in denying this claim.[FN2]

[FN2] Carley also claimed counsel should have attempted to suppress evidence obtained through a search during the arrest of a codefendant. Carley cannot demonstrate either deficiency for prejudice for this claim because she did not have standing to challenge the search for her codefendant. *See Rakas v. Illinois*, 439 U.S. 128, 133-34, (1978) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted").[63]

I find that the Nevada Court of Appeals' rejection of Carley's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.  Evidence obtained in violation of the Fourth Amendment may be suppressed.[64] Probable cause is required to justify certain governmental intrusions upon interests protected by the Fourth Amendment.[65]  Probable cause to search exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place."[66]  Fourth Amendment rights are personal rights that may not be vicariously asserted, and "a person aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."[67]

The Nevada Court of Appeals' determination that Carley failed to demonstrate a reasonable probability that, but for counsel's failure to challenge the search warrant, she would have pled differently and insisted on going to trial was reasonable.  As the Court of Appeals noted, the breadth of the search warrant was supported by probable cause.[68]  During an interview, Carley admitted to a detective that she purchased a vehicle from Carmax using

---

[63] ECF No. 19 at 3–4.

[64] *Wong Sun v. United States*, 371 U.S. 471 (1963).

[65] *Illinois v. Gates*, 462 U.S. 213, 241 (1983).

[66] *Id.* at 238.

[67] *Rakas v. Illinois*, 439 U.S. 128 (1978).

[68] *Id.* at 4.

another individual's ID.[69]  Over a recorded telephone line, Carley called Stojic to discuss destroying IDs and to leave the apartment residence.[70]  Detectives further investigated the rental agreement and documents related to the vehicle purchase.[71]  The Court of Appeals reasonably found that the search warrant described the items to be seized with sufficient particularity.  It directed the police to seize evidence of specific crimes related to creating fraudulent documents.[72]

In addition, as the Court of Appeals noted, Carley could not vicariously challenge the search of Barraza during his arrest.[73]  Carley's assertion that her counsel could have argued that "there was reasonable doubt about which items came from where" regarding the evidence seized does not demonstrate prejudice.[74]  Given that the police executed a valid search, Carley failed to demonstrate a reasonable probability that she would have pled guilty and faced fifty-nine additional charges at trial, but for counsel's failure to challenge the search warrant.[75] Accordingly, the Nevada Court of Appeals' determination that Carley failed to demonstrate prejudice was not an unreasonable application of *Strickland*.

"Deference to the state court's prejudice determination is all the more significant in light of the uncertainty inherent in plea negotiations . . . .  The stakes for defendants are high, and many elect to limit risk by forgoing the right to assert their innocence.  A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that

---

[69] ECF Nos. 13-6, 13-10 at 6.

[70] ECF No. 13-10 at 6.

[71] *Id.* at 4-8.

[72] ECF No. 13-7 at 4.

[73] *See Rakas v. Illinois*, 439 U.S. 128 (1978).

[74] ECF No. 12 at 26.

[75] *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("[P]etitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

evidence."[76]  Carley falls short of overcoming the substantial deference that is owed to such state court determinations.  She failed to demonstrate that, had counsel moved to suppress the evidence seized as a result of the search warrant, the motion would have been successful or she would have pled differently and insisted on going to trial.  So I deny Carley habeas relief on Ground 1(a).

I would reach the same result as to Ground 1(a) on *de novo* review for additional reasons. Although Carley cites to Stojic's plea deal on remand to support her claim of ineffective assistance of counsel, Stojic's plea deal does not establish deficiency or resulting prejudice. There are substantial distinctions between the procedural posture and evidence against Stojic and Carley.  Stojic's motion to withdraw his guilty plea was based on his trial counsel's ineffective assistance, and on appeal the Nevada Court of Appeals found that the state district court abused its discretion by not appointing conflict-free counsel to represent Stojic during the pendency of his motion to withdraw guilty plea, whereas Carley was granted alternate counsel.  Stojic thus entered into his plea agreement after his case was remanded on appeal.  Further, Carley had confessed to law enforcement that she purchased a vehicle from Carmax using another individual's identification.  Carley called Stojic on a recorded line to discuss disposing of identifications and to warn Stojic that he should leave the apartment.  The State in Stojic's case faced the cost of litigation and the risk of Stojic blaming the crimes on his co-defendants who had already been sentenced.  Accordingly, Stojic's plea agreement on remand does not establish that Carley's counsel's performance fell below an objective standard of reasonableness or that, but for Carley's counsel's alleged error, Carley would not have pled guilty and would have insisted on going to trial.

2.      ***Ground 1(b)—ineffective assistance re: motion to suppress Carley's statements to law enforcement.***

In Ground 1(b), Carley alleges that her counsel was ineffective for failing to move to suppress Carley's incriminating statements to law enforcement on the basis that (1) she invoked

---

[76] *Premo v. Moore*, 562 U.S. 115, 129 (2011).

her right to counsel during the interview, (2) police told Carley that her probation would be revoked if she failed to answer questions, and (3) the police failed to record the interview.[77] Respondents argue that Carley's claim is procedurally defaulted and that her claim would nonetheless fail because Carley waived her right to counsel.[78]  In my order granting dismissal in part, I found that this ground for relief was technically exhausted, but I deferred ruling on whether Carley can demonstrate cause and prejudice under *Martinez v. Ryan* until the merits of these grounds were briefed by the parties.[79]  That time has come.

To show that a claim is "substantial" under *Martinez*, a petitioner must demonstrate that the underlying ineffectiveness claim has "some merit."[80]  That is, the petitioner must be able to make at least some showing that trial counsel performed deficiently and that the deficient performance harmed the defense.[81]  When evaluating counsel's choices, I must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[82]  "[C]ounsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[83]  I now determine that these grounds are not substantial and lack merit.

Carley has not established that her counsel's performance fell "outside the wide range of professionally competent assistance."[84]  Counsel filed a motion to compel the production of the detectives' handwritten notes to cross-reference against the detectives' typed transcript-like notes

---

[77] ECF No. 12 at 33.

[78] ECF No. 45 at 9–12.

[79] ECF No. 34. *See Martinez v. Ryan*, 566 U.S. 1 (2012).

[80] *Martinez*, 566 U.S. at 14.

[81] *See Strickland*, 466 U.S. at 695–96.

[82] *Id.* at 689.

[83] *Pinholster*, 563 U.S. at 189.

[84] *Strickland*, 466 U.S. at 690.

1  of their interview with Carley, which the state district court granted.[85]  According to the

2  detectives' notes, Carley was given her *Miranda* rights and she affirmatively stated that she

3  understood them.[86]  In the arrest report, it was documented that Carley was read her *Miranda*

4  rights and that she agreed to speak with the detectives.[87]  Further, counsel did not have basis to

5  object to Carley's interview with police on the basis that it was not video or audio taped because

6  there is no federal requirement that interviews or interrogations be recorded.[88]

7            Nor do I find that Carley can demonstrate that, but for counsel's failure to move to

8  suppress her statements to law enforcement, that she would have rejected the plea offer and

9  proceeded to trial.  Following Carley's initial interview with detectives while she was in custody

10  for separate probation violations, she called Stojic on a recorded telephone line.  Carley informed

11  Stojic that IDs were "hot," that the police knew where Stojic was, and that he needed to leave.[89]

12  Additionally, the Carmax employee testified that a man and a woman were present at the time of

13  the vehicle purchase, and the employee identified Stojic.[90]  The car loan documents listed an

14  address that was associated with Carley, the State listed Carley's probation officer as a witness to

15  testify regarding Carley's residence, and a copy of the driver's license submitted with the car

16  loan documents was seized at Carley's apartment.

17

18

---

19  [85] ECF Nos. 14-13, 14-20 at 4–5.

20  [86] ECF No. 13-6 at 1.

21  [87] ECF No. 13-7 at 6.

22  [88] See *United States v. Montgomery,* 390 F.3d 1013, 1017 (7th Cir.2004) (refusing to require the
23  electronic recording of all interrogations); *Reinert v. Larkins,* 379 F.3d 76, 94 n. 4 (3d Cir. 2004)
    (declining to infer a federal right to have custodial interrogations recorded); *United States v.*
24  *Yunis,* 859 F.2d 953, 961 (D.C. Cir. 1988) (determining that there is no constitutional
    requirement that confessions be recorded by any particular means); *United States v. Owlboy,* 370
25  F. Supp. 2d 946, 949 (D.N.D. 2005)(denying motion to suppress on the basis that there is no
    federal requirement that interviews be recorded).
26

27  [89] ECF No. 13-7 at 6–7.

28  [90] ECF No. 13-20 at 27.

Further, a "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."[91]  In exchange for Carley's guilty plea, the State agreed to drop 59 charges that were predominately felonies carrying substantial prison sentences.  If Carley rejected the plea agreement and proceeded to trial, she would have faced those additional charges and would not have gained the benefit of reduced exposure at sentencing.  Faced with potentially substantial prison sentences as well as Carley's recorded conversations with Stojic regarding "hot" IDs, I am not persuaded that Carley would have rejected the offer and proceeded to trial.  For all these reasons, I conclude that Carley's claim is without merit and, thus, is not a substantial claim of ineffective assistance of counsel.  Carley cannot overcome the procedural default of Ground 1(b), and this claim must therefore be dismissed.

### 3.    *Ground 1(c)—ineffective assistance: insufficient indictment*

In Ground 1(c), Carley asserts that counsel was ineffective for failing to file a pre-trial writ of habeas corpus challenging the charges in the indictment as legally insufficient.[92]  Carley alleges that at least three of the unlawful possession of credit or debit cards counts were based on prepaid cards that are not criminalized under the statute.[93]  Respondents argue that Carley pled guilty to the amended indictment and, therefore, the language of the original charging document is not relevant.[94]  The Nevada Court of Appeals rejected this claim:

> Carley claimed her counsel was ineffective for failing to file a pretrial writ of habeas corpus arguing there was insufficient evidence presented at the grand jury proceedings.  Carley failed to demonstrate either deficiency or prejudice for this claim because the State presented evidence to support the grand jury's probable cause finding.  *See Sheriff, Washoe Cty. v. Hodes*, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980).  Therefore, the district court did not err in denying this claim.[95]

---

[91] *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

[92] ECF No. 12 at 35.

[93] *Id.* at 36–37.

[94] ECF No. 45 at 13.

[95] ECF No. 19 at 9.

1    The Nevada Court of Appeals' determination that Carley failed to demonstrate deficiency

2 or prejudice was not an unreasonable application of *Strickland*.  As noted by the Nevada Court of

3 Appeals, Carley did not demonstrate that there was a basis for objectively reasonable counsel to

4 object to the indictment as the State presented enough evidence to support the grand jury's

5 probable cause finding.  Counsel's decision not to object does not fall "outside the wide range of

6 professionally competent assistance."[96] Further, Carley did not demonstrate a reasonable

7 probability that if her counsel challenged the charges of the indictment, she would have pled

8 differently and proceeded to trial.  The state initially charged Carley with sixteen counts of

9 unlawful possession of credit or debit cards.[97] As a result of plea negotiations, in the amended

10 information to which Carley entered a guilty plea, the prior sixteen counts of unlawful

11 possession of credit or debit cards were collapsed into a single count.[98] Accordingly, Carley is

12 denied federal habeas relief for Ground 1(c).

13

14    **4.    *Grounds 1(d)—ineffective assistance re: failure to pursue theory that Carley did not possess items located at 1500 Karen Ave.***

15    In Ground 1(d), Carley asserts that her counsel provided ineffective-assistance regarding

16 Carley's residency of the apartment.  Carley asserts that she was in custody and was not living at

17 the apartment for eleven days prior to the time that the search warrant was executed[99] and

18 counsel was rendered ineffective for failing to pursue the defense theory that she did not possess

19 the items seized in the apartment.[100]  In her state habeas appeal, the Nevada Court of Appeals

20 rejected this theory:

21    Carley failed to demonstrate her counsel's performance was deficient or resulting prejudice.  Carley provided no factual basis to support this claim.  Bare claims, such

22    as this one, are insufficient to demonstrate that a petitioner is entitled to relief.  *See Molina v. State*, 120 Nev. 185, 192, 87 P.2d 533, 538 (2004) (a petitioner claiming

23

24 [96] *Strickland*, 466 U.S. at 690.

25 [97] ECF No. 13-25.

26 [98] ECF No. 14-30.

27 [99] ECF No. 12 at 38–39.

28 [100] ECF No. 46 at 72.

> counsel did not conduct an adequate investigation must specify what a more thorough investigation would have uncovered); *see also Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (explaining that bare and naked claims are insufficient to demonstrate that a petitioner is entitled to relief).
>
> Moreover, the search of the apartment revealed a large amount of documents containing Carley's information and Carley was listed as a resident on the rental insurance agreement. Under these circumstances, Carley failed to demonstrate a reasonable probability she would have insisted on going to trial and would have refused to plead guilty had counsel conducted further investigation. Therefore, the district court did not err in denying this claim.[101]

The Nevada Court of Appeals' determination that Carley failed to demonstrate deficiency or prejudice was not an unreasonable application of *Strickland*. Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[102] In an ineffectiveness-of-counsel case, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[103] In assessing counsel's investigation, the court must conduct an objective review of counsel's performance, measured for "reasonableness under prevailing professional norms." [104] This includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time."[105] "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[106]

As the Nevada Court of Appeals noted, paperwork, including court records containing Carley's name and photographs of her were located at the apartment during the execution of the search warrant.[107] Carley was listed as an additional insured under the rental insurance

---

[101] ECF No. 19 at 5–6.

[102] *Strickland*, 466 U.S. at 691.

[103] *Id.*

[104] *Id.* at 688.

[105] *Id.* at 689.  *See Wiggins v. Smith*, 539 U.S. 510, 523 (2003).

[106] *Strickland,* 466 U.S. at 690.

[107] ECF No. 13-20 at 43.

agreement.[108]  She admitted to law enforcement that she used an ID that was located in the apartment to purchase a vehicle.[109]  While she was in custody for separate probation violations, Carley called Stojic on a recorded line and discussed getting rid of IDs and getting out of the apartment.[110]  Moreover, while discussing a plea offer, counsel for Carley noted to the State that Carley was in custody at the time that the search warrant was executed and that other individuals had access to the apartment, which illustrates that counsel made reasonable investigation into this theory of defense.[111]  Considering the amount of evidence linking Carley to the apartment and the potential for prejudice if a jury became aware that Carley was in custody for a probation violation, counsel's decision not to pursue this theory was "reasonable under prevailing professional norms."[112]

Under these circumstances, as the Nevada Court of Appeals noted, Carley failed to demonstrate that she would have pled differently and insisted on going to trial.  It is unlikely that further investigation would have led counsel to change her recommendation on the plea, as the theory would not have likely resulted in a successful outcome at trial.[113]  So I deny Carley habeas relief on Ground 1(d).

### 5.    *Ground 1(e)—ineffective assistance re: sentencing advice*

In Ground 1(e), Carley asserts that her counsel was rendered ineffective because counsel incorrectly advised her that she was not eligible for treatment as a habitual criminal at sentencing.[114]  Carley further asserts that when she realized she was eligible to be sentenced

---

[108] *Id.* at 20.

[109] ECF No. 13-10 at 3.

[110] *Id.* at 4.

[111] ECF No. 14-2.

[112] *Strickland*, 466 U.S. at 690.

[113] *Hill*, 474 U.S. at 59.

[114] ECF No. 12 at 40.

1  under the small habitual criminal provision, she informed her attorney that she wanted her plea

2  withdrawn.[115]  In her state habeas appeal, the Nevada Court of Appeals held:

> Carley claimed her counsel was ineffective for advising her she was not eligible for adjudication as a habitual criminal.  Carley failed to demonstrate her counsel's performance was deficient or resulting prejudice.  In the guilty plea agreement, Carley acknowledged discussing her case with her counsel and acknowledged she faced adjudication as a habitual criminal.  In addition, at the plea canvass the district court advised Carley that she was subject to adjudication as a habitual criminal, informed Carley of the sentencing range, and Carley acknowledged that she understood.  Carley failed to demonstrate a reasonable probability she would have refused to plead guilty and would have insisted on going to trial had she had further discussions with her counsel regarding adjudication as a habitual criminal.  Therefore, the district court did not err in denying this claim.[116]

10        The Nevada Court of Appeals' determination that Carley failed to demonstrate prejudice

11  was not an unreasonable application of *Strickland*.  The assertion that counsel advised Carley

12  that she was not eligible as a habitual criminal is belied by the record.  The guilty-plea agreement

13  signed by Carley set forth that the State retained the right to argue for the small habitual criminal

14  enhancement and Carley affirmed that the elements, consequences, rights, and waiver of rights in

15  the guilty plea agreement were thoroughly explained to her by her attorney.[117]  In addition, at the

16  plea canvass, the state district court advised Carley that "the State will retain the right to argue

17  including the small habitual criminal enhancement, but not the large enhancement," and further

18  explained that if Carley was sentenced under the small habitual criminal enhancement, the state

19  district court "must sentence [Carley] to a term of imprisonment of 5 to 20 years."[118]  Carley

20  affirmed to the state district court that she understood the sentencing range.[119]  The Nevada

21  Court of Appeals reasonably determined that Carley failed to demonstrate a reasonable

---

[115] ECF No. 15-2 at 7.

[116] ECF No. 19 at 4–5.

[117] ECF No. 15 at 2, 7.

[118] ECF No. 14-21 at 16–18.

[119] *Id.*

1    probability that but for counsel's alleged failure to advise Carley that she was eligible for

2    habitual criminal sentencing, she would have insisted on going to trial.

3           In order to prevail on an ineffective-assistance-of-counsel claim, Carley must show that

4    her counsel acted both deficiently and resulting prejudice.  However, I need not "address both

5    components of the inquiry" if there is an "insufficient showing on one."[120]  Because Carley has

6    not sufficiently demonstrated prejudice, the *Strickland* inquiry need not continue and I deny

7    Carley habeas relief on Ground 1(e).

8                    **6.    *Ground 2—knowing, voluntary, intelligent guilty plea***

9           In Ground 2, Carley asserts that the State presented a plea deal that was contingent on

10   both Carley and Stojic accepting the plea agreement[121] and that her counsel and Stojic's counsel

11   coerced her into accepting the deal because they told her she would lose at trial if she did not

12   accept the plea.  Carley further asserts that Stojic's counsel stated that he would "blame

13   everything on [Carley]" at trial.[122]  She alleges that her counsel's inadequate advice prevented

14   her from making an informed choice.[123]  On direct appeal, the Nevada Supreme Court rejected

15   these arguments:

16              [Carley] contends that she was coerced into the plea because her counsel told her
                that she would lose if she went to trial and her codefendant's counsel informed her
17              that he would blame the offenses on her if she went to trial.  The district court
                conducted an evidentiary hearing, noted that appellant had denied any coercion
18              during the plea canvass, and found that her claim of coercion was belied by the
                record and her plea was entered knowingly and voluntarily.  The written plea
19              agreement and transcripts of the plea canvass and evidentiary hearing support the
                district court's finding that appellant's plea was voluntary.  *See Crawford*, 117 Nev.
20              at 722, 30 P.3d at 1126 ("A thorough plea canvass coupled with a detailed,
                consistent, written plea agreement supports a finding that the defendant entered the
21              plea voluntarily, knowingly, and intelligently.").  Thus, we conclude that the district
                court did not abuse its discretion by denying appellant's motion to withdraw her
22              guilty plea.[124]

23   _____

24   [120] *Strickland*, 466 U.S. at 690.

25   [121] ECF No. 12 at 43.

26   [122] *Id.* at 44.

27   [123] ECF No. 46 at 80.

28   [124] ECF No. 15-20 at 3.

1    In Carley's state habeas appeal, the Nevada Court of appeals agreed with the Nevada

2    Supreme Court and held that "Carley cannot demonstrate either deficiency or prejudice for this

3    claim because the Nevada Supreme Court has already considered the underlying claim and

4    concluded Carley was not coerced into pleading guilty."[125]  I find that the state appellate courts'

5    rejection of Carley's claim was neither contrary to nor an unreasonable application of clearly

6    established law as determined by the United States Supreme Court.  The federal constitutional

7    guarantee of due process of law requires that a guilty plea be knowing, intelligent, and

8    voluntary.[126]  The longstanding test for determining the validity of a guilty plea is "whether

9    the plea represents a voluntary and intelligent choice among the alternative courses of action

10   open to the defendant."[127]  "The voluntariness of [a petitioner's] plea can be determined only by

11   considering all of the relevant circumstances surrounding it."[128]  Every defendant involved in

12   plea negotiations suffers the threat of conviction (often of greater charges or with greater

13   penalty) and must face such "difficult choices."[129]

14   Here, Carley faced the difficult choice of pleading guilty in exchange for the State

15   dropping 59 charges against her and her co-defendant and to receive the benefit of reduced

16   exposure at sentencing.  As noted by the Nevada Supreme Court, Carley affirmed in the plea

17   agreement and at the plea canvass that her plea was not coerced and that she discussed possible

18   defenses with counsel.[130]  At the evidentiary hearing, the state district court held that Carley's

19   allegations that she was coerced "are belied by the record that at any point she could have

20   stopped the plea and said: Hold on, I want to go to trial," and that her plea "was freely and

21

22   [125] ECF No. 19 at 5.

23   [126] *See Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

24   [127] *Hill*, 474 U.S. at 56.

25   [128] *Brady*, 397 U.S. at 749.

26   [129] *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978).

27
28   [130] ECF Nos. 14-31 at 22, 15 at 7.

voluntarily entered into."[131]  "Solemn declarations in open court carry a strong presumption of verity."[132]  The record demonstrates that Carley understood the consequences and benefits of her guilty plea and that she entered the guilty plea knowingly, intelligently, and voluntarily. Carley's claim lacks merit given the high burden of AEDPA and based on the relevant circumstances surrounding her plea, the state appellate courts reasonably concluded that Carley failed to establish that her plea was not knowing, intelligent, or voluntary.  Accordingly, I deny Carley habeas relief on Ground 2.

C.    Certificate of Appealability

The right to appeal from the district court's denial of a federal habeas petition requires a certificate of appealability.  To obtain that certificate, the petitioner must make a "substantial showing of the denial of a constitutional right."[133]  "Where a district court has rejected the constitutional claims on the merits," that showing "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[134]  Because I have rejected petitioner's constitutional claims on their merits and she has not shown that this assessment of her claims is debatable or wrong, I find that a certificate of appealability is unwarranted in this case.

. . .

---

[131] ECF No. 15-9 at 12.

[132] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

[133] 28 U.S.C. § 2253(c).

[134] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).

**Conclusion**

IT IS THEREFORE ORDERED that the petition **[ECF No. 12] is DENIED**, and because reasonable jurists would not find my decision to deny this petition to be debatable or wrong, a **certificate of appealability is DENIED**.

The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

Dated: March 17, 2021

_____
U.S. District Judge Jennifer A. Dorsey